

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>FOPCO, INC.<br><br>                Debtor. | Case No. 18-01084<br>Chapter 7 |
| RICHARD A. YANAGI, Chapter 7 Trustee,<br><br>                Plaintiff,<br><br>vs.<br><br>DENNIS C. McELRATH; 2149 LAUWILIWILI LLC; and CD INVESTMENTS LIMITED PARTNERSHIP,<br><br>                Defendants. | Adv. Pro. No.: 20-90014 |

# ORDER GRANTING MOTION TO AMEND COMPLAINT TO CONFORM TO EVIDENCE

At the end of the trial of this adversary proceeding, plaintiff Richard A. Yanagi, as bankruptcy trustee of FOPCO, Inc., announced that the plaintiffs intended to file a motion to amend the complaint to conform to the evidence admitted at trial. The plaintiffs filed the motion (ECF 262), defendants filed an opposition (ECF 272), and plaintiffs filed a reply (ECF 280). The motion is suitable for decision without a hearing.

## A. BACKGROUND

### 1. Fraudulent Transfer Law

A bankruptcy trustee can seek to avoid and recover fraudulent transfers under at least two sets of laws. First, Bankruptcy Code § 548 allows trustees to challenge such transfers. Second, Bankruptcy Code § 544(b) allows the trustee to assert avoidance claims under applicable nonbankuptcy law that an existing creditor of the debtor could assert. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 807 (9th Cir. 1994). In Hawaii, this means that bankruptcy trustees can often employ Hawaii's version of the Uniform Fraudulent Transfers Act, Haw. Rev. Stat. §§ 651C-1 et seq. ("HUFTA").

2

U.S. Bankruptcy Court - Hawaii    #20-90014    Dkt # 287    Filed  03/06/24    Page 2 of 16

The elements of the claims under § 548[1] and HUFTA are nearly identical. Both statutes permit avoidance of transfers made with the actual intent to hinder, delay, or defraud a creditor. *Compare* Bankruptcy Code § 548(a)(1)(A) *with* HUFTA § 651C-4(a)(1). Both statutes permit avoidance of transfers where the debtor did not receive a reasonably equivalent value in exchange and the debtor was undercapitalized or lacked sufficient cash flow to pay its debts on time. *Compare* Bankruptcy Code § 548(a)(1)(B)(i) and (ii)(II-III) *with* HUFTA § 651C-4(a)(2).

Both statutes also permit avoidance of transfers where the debtor did not receive a reasonably equivalent value in exchange and the debtor was insolvent, or became insolvent, under a balance sheet test. There is no material difference in the language of the two provisions. The Bankruptcy Code section provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . , that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . was insolvent on the date that such transfer was made . . . or

---

[1] All references to sections refer to the Bankruptcy Code, 11 U.S.C., unless the reference mentions HUFTA.

3

became insolvent as a result of such transfer or obligation . . . .

Bankruptcy Code § 548(a)(1)(B)(i) and (ii)(I). The relevant HUFTA provision reads as follows:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer . . . .

HUFTA § 651C-5(a).

There is one relevant difference between the Bankruptcy Code and HUFTA provisions: the "reach-back" period covered by the two statutes is different. Bankruptcy Code § 548 permits the avoidance of fraudulent transfers "made . . . on or within 2 years before the date of the [bankruptcy] petition." Bankruptcy Code § 548(a)(1). In contrast, HUFTA § 651C-9 provides that most claims under HUFTA are extinguished upon the longer of (a) four years after the transfer was made or (b) one year after the claimant could reasonably have discovered the fraudulent nature of an intentional fraudulent transfer. *Schmidt v. HSC, Inc.*, 131 Haw. 497, 507-08 (2014). In addition, a bankruptcy trustee has two years after the petition date to file

4

any actions that were timely on the petition date. Bankruptcy Code § 108(a). This means that a trustee can employ § 548 to challenge transfers made up to two years before the petition and can use HUFTA to attack transfers that were made four years or more before the date of the bankruptcy petition.

The standard of proof, at least for "intentional" fraudulent transfer claims, may be different. The preponderance standard probably applies under § 548(a). *Western Wire Works, Inc. v. Lawler (In re Lawler)*, 141 B.R. 425, 428-29 (Bankr. 9th Cir. 1992) (in a proceeding under § 523, stating that "the preponderance standard applies in all bankruptcy proceedings grounded in allegations of fraud"); *Weisfelner v. Blavatnik (In re Lyondell Chemical Co.)*, 567 B.R. 55, 108 (Bankr. S.D.N.Y. 2017). But the "clear and convincing" standard applies at least to intentional fraudulent transfer claims under HUFTA § 651C-4(a)(1), *Kekona v. Abastillas*, 113 Hawaii 174, 180-82 (2006), and perhaps to "constructive" fraudulent transfer claims as well.[2] ).

---

[2] *Kekona* refers to fraudulent transfer claims generally and does not distinguish between intentional and constructive fraudulent transfers.

5

## 2. Proposed Amendments

In this case, the trustee's complaint includes counts for intentional fraudulent transfers under both the Bankruptcy Code and HUFTA (counts 1, 3, 5, 7, and 10). The complaint also includes counts based on the undercapitalization and insufficient cash flow provisions of the Bankruptcy Code and HUFTA (counts 2, 4, 6, 8, 9, 11, and 12). The plaintiffs bring this motion because the complaint cites the insolvency provisions of the Bankruptcy Code, § 548(a)(1)(B)(i) and (ii) (counts 2, 9, and 12), but it does not cite HUFTA § 651C-5(a), the state law insolvency provision.

## 3. Rule 15(b) Standard

The plaintiffs argue that the complaint should be deemed amended to cite, not just § 548(a)(1)(B)(i) and (ii), but also HUFTA § 651C-5(a), in support of the balance sheet insolvency claims. They rely on Fed. R. Civ. P. 15(b)(2):

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Under the plain terms of the rule, the court must treat all issues as if

U.S. Bankruptcy Court - Hawaii   #20-90014   Dkt # 287   Filed 03/06/24   Page 6 of 16

they were raised in the pleadings if only one condition is met: when the parties expressly or impliedly consented to try the unpled issue. To determine whether implied consent is appropriate, courts often consider whether a party "would be prejudiced by the implied amendment, i.e., whether [the party] had a fair opportunity to defend and whether [the party] could offer any additional evidence if the case were to be retried on a different theory." *Browning Debenture Holders' Comm. V. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977).

## B. DISCUSSION

For the following reasons, I will grant the motion.

### 1. What Is The "Issue"?

The additional statute that the plaintiffs wish to cite is not an unraised "issue." The rules do not define the term "issue." Courts construing the rules have held that a pleading must assert "claims for relief, not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) ("[i]n practice, a complaint ... must contain either direct or inferential allegations respecting

7

all the material elements necessary to sustain recovery under some viable legal theory." (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984))). In other words, pleadings are supposed to allege the facts which the pleader contends give rise to liability, and need not allege or argue the legal theories that the pleader contends are applicable to those facts. Therefore, the complaint need not be amended to cite § 548(b)(1)(B) because the trustee was never required to cite any statutes in his complaint.

This is particularly apt in this case because the statute that the plaintiffs neglected to cite (HUFTA § 651C-5(a)) is nearly identical in substance and effect to a statute that the plaintiffs did cite (§ 548(b)(1)(B)). The only differences between the statute are the reach-back period and (possibly) the standard of proof, and those are not matters that must be alleged.

For purposes of rule 15(b) and this motion, the relevant issues are not whether the plaintiffs are entitled to recover under any particular statute, but rather whether FOPCO was insolvent on the dates of the challenged transfers and whether FOPCO received reasonably equivalent value in exchange. Those issues were pled, so no "implied amendment" is necessary.

8

## 2. Were The "Issues" Tried By Consent?

But even assuming the HUFTA § 651C-5(a) legal theory of recovery is a new "issue," it was tried by consent. The defendants thought that HUFTA § 651C-5(a) was in play: to name only one example, their principal expert, who got his instructions from the defendants' counsel, mentioned § 651C-5(a) in his report (ECF 175 at 66). The trial focused almost exclusively on FOPCO's solvency on each of the dates of the questioned transfers, including January 15, 2015. Solvency has the same meaning under both statutes. *Compare* § 101(32)(A) ("[t]he term 'insolvent' means . . . financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . .") *with* HUFTA 651C-2(a) ("A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."). No party objected to any evidence on the basis that it was relevant under one of the statutes but not the other.

*In re Acequia, Inc.* explains the threshold unpled claims must surmount to ensure rule 15(b) compliance. In that case, a chapter 11 debtor in possession sued to recover money from the debtor's former principal. The

9

complaint had multiple counts, apparently corresponding to specific transfers or sets of transfers. Counts V to IX pled for the avoidance and recovery of some of the transfers "pursuant to relevant provisions of the Bankruptcy and Idaho Codes." Counts X and XI related to other transfers and did not cite any statutes; rather, they asserted "clean and straight-forward" claims for restitution. At trial, the trustee urged the magistrate judge to analyze the transfers challenged in counts V to IX under a restitution theory, even though the complaint did not assert that theory as to those transfers, arguing that the same evidence was relevant to both theories. The magistrate judge declined to do so, and the Ninth Circuit affirmed, holding that the introduction of evidence relevant to pleaded issues "cannot serve to give a party fair notice that new issues are entering the case." *Id*. at 814, *quoting Wesco Mfg. v. Tropical Attractions*, 833 F.2d 1484, 1487 (11th Cir. 1987).

The plaintiffs' motion meets the standard of implied consent as set forth in *Acequia*. It is true that most of the evidence supporting the insolvency claims under the federal statute also supports claims under the

10

corresponding state statute. But that is not true of all of the evidence. Much of the evidence concerned FOPCO's solvency on January 15, 2015, the date of the first challenged transfer. That evidence could not establish a claim under § 548(a)(1)(B)(i) because that transfer occurred outside the two-year reach-back period under the federal statute. That evidence was only relevant to a claim under HUFTA, because of HUFTA's longer four-year reach-back period. Yet the defendants did not object to that evidence on the basis that it could not support a claim under § 548(a)(1)(B)(i). This means that the defendants impliedly consented to a trial in which HUFTA § 651C-5(a) was in play.

*Vital Pharmaceuticals, Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180 (S.D. Fla. 2021), does not help the defendants' argument. In that case, VPX, an energy drink manufacturer, claimed that Monster, another energy drink manufacturer, had designed its cans in a way that infringed on VPX's trade dress. In the pleadings, the joint pretrial stipulation, and other papers, VPX had defined its trade dress in a particular way. But in its opening statement at trial, VPX sought to redefine its trade dress (by adding specific colors and

11

other features of the label that it had not previously claimed). After the evidentiary portion of the trial, VPX moved to amend its complaint based on rules 15(b)(2) (and other grounds not relevant to this case). The court rejected this request for two reasons. First, the court held that Monster had not impliedly consented to a trial based on a new trade dress definition. Second, the court held that, while rule 15(b)(2) permits amendment of the pleadings, it does not permit amendment of a joint pretrial stipulation, and there was no basis to excuse VPX from its agreement.

*Vital v. Monster* is inapplicable. The plaintiff's definition of its own trade dress was a key factual element of VPX's case; therefore, the new definition injected a new issue into the case. Unlike this case, the new trade dress definition was not just another legal theory of liability that could be applied to the evidence that was already admitted. Further, there is no joint pretrial stipulation in this case, so the plaintiffs are not bound by any express agreement.

U.S. Bankruptcy Court - Hawaii    #20-90014    Dkt # 287    Filed  03/06/24    Page 12 of 16

### 3. Would The Implied Amendment Prejudice The Defendants?

There is no reason to think that the defendants would have presented any additional or different evidence at trial if the trustee had explicitly asserted HUFTA § 651C-5(a) as a legal theory of recovery. Mr. McElrath and the defendants' expert testified extensively about the financial condition of FOPCO in January 2015 and the dates of the later transfers.

The defendants attempt to avoid addressing this issue. They argue that they should not be forced to give the plaintiffs a "free look" at the evidence they would have offered if the plaintiffs had mentioned HUFTA § 651C-5(a). This argument is both coy and unpersuasive. The plaintiffs made a plausible argument in the motion that the defendants were not prejudiced. The defendants chose at their own peril to respond only partially to the plaintiffs' argument.

The defendants identify only two categories of evidence that they contend they would have offered if HUFTA § 651C-5(a) were cited in the complaint. First, they contend that they would have "insisted" that the plaintiffs produce all documents showing when each and every invoice that

13

Nan sent to FOPCO became contractually due and owing. But the defendants made this contention in response to the claims under § 548 and HUFTA § 651C-4 with all the force they could muster; it is simply inconceivable that they could or would have argued this point more vigorously. Second, they claim that they would have offered Alan Hoe as an expert witness on solvency, rather than as a witness about FOPCO's state of mind. This argument is equally incredible. The defendants offered Mr. Hoe's report as an exhibit with no restriction on its purpose. They wanted to offer him as an expert, but I did not receive his report as such because the defendants never identified him as an expert as the scheduling order required. Moreover, the defendants offered and I received Mr. Krieger's fulsome expert testimony on the solvency issue.

### 4. The Plaintiffs Did Not Act In Bad Faith

The defendants argue that the plaintiffs delayed offering the proposed amendment in bad faith.[3] They point out that this adversary proceeding and

---

[3] The defendants cite no case holding that "bad faith" is an independent basis to deny an implied amendment under rule 15(b). The only case they cite was decided under rule 15(a). *Madeja v. Olympic Packers, LLC*, 310 F. 3d 626, 628 (9th Cir. 2002). But although bad faith may not be a stand-alone basis to refuse an implied amendment, bad faith is probably relevant to the question whether the issue was tried

the main bankruptcy case have been pending for years, that the plaintiffs had many opportunities to amend the complaint earlier, and that the deadline to amend the pleadings under the scheduling order passed long ago. These points are all accurate. But sheer delay, missed opportunities, and blown deadlines do not necessarily amount to bad faith. Rather, bad faith connotes a deliberate attempt to gain an improper advantage. *Wallin v. Fuller*, 476 F.2d 1204, 1211 (5th Cir. 1973) (excusing a failure to bring up an issue before trial as careless, but not as an attempt to "smuggle in issues" to surprise the defense). The plaintiffs had nothing to gain and everything to lose by citing only the Bankruptcy Code provision and omitting the substantively identical HUFTA section. The plaintiffs were careless, but they did not act in bad faith.

The defendants also claim that they relied on the court's admonitions when Nan purchased part of the trustee's claims and became a plaintiff. I warned Nan that the trial date was fast approaching and that I was strongly

---

with consent: for example, if one party deliberately sandbagged the other, it would be hard to infer the other party's consent.

15

U.S. Bankruptcy Court - Hawaii   #20-90014   Dkt # 287   Filed  03/06/24   Page 15 of 16

disinclined to tolerate any delay. I did not say or imply that rule 15(b) could not apply to the case, and the defendants could not have reasonably relied on any such assurance.

## C. **CONCLUSION**

For these reasons, the motion is GRANTED.

**END OF ORDER**